UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

| | |
|---|---|
| ANTHONY FERRO,<br>ON BEHALF OF HIMSELF AND<br>ALL OTHERS SIMILIARLY SITUATED,<br><br>                        Plaintiff,<br>v<br><br>ALLIED INTERSTATE, LLC, IQOR US, INC.,<br>AND SYNCHRONY BANK,<br><br>                        Defendants. | Civil Action, File No.<br>1:19-cv-00049-ARR-ST |

**COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

Plaintiff, Anthony Ferro [hereinafter "Ferro"] on behalf of himself and all others similarly situated, by and through his attorney, Mitchell L. Pashkin, Esq., complains of Defendant, Allied Interstate, LLC [hereinafter "AI"], IQor US, Inc. [hereinafter "IU"], and Synchrony Bank [hereinafter "Synchrony"] and alleges as follows:

1. This court has jurisdiction of this case pursuant to 15 U.S.C. § 1692k(d), 28 USCS § 1331, and/or pursuant to 28 USCS § 1332 (d)(2)(A).

2. Venue in this district is proper based on Defendants' regular transaction of business within this district.  Venue in this district also is proper based on AI possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency" in New York City which includes this district.  Defendants also derive substantial revenue from services rendered in this district.  The aforementioned transaction of business and services includes but is not limited to the collection of debt from consumers who reside in this district.

3. Venue in this district also is proper in light of the occurrences which form the basis for this Complaint having occurred in whole or in part in this district.

4. Plaintiff demands a trial by jury pursuant to FRCP 38 (b).

5. Ferro is a natural person who resides at 1801 Gerritsen Avenue, Brooklyn, NY 11229.

6. Ferro is a "consumer" as defined by 15 U.S.C. § 1692(a)(3) of the FDCPA.

7. Ferro was mailed the letter annexed as Exhibit A.

8. Exhibit A is dated January 2, 2018.

9. Exhibit A was delivered to the United States Postal Service for mailing to Ferro on January 2, 2018 or January 3, 2018.

10. Ferro received Exhibit A on January 5, 2018 or January 6, 2018.

11. Ferro read Exhibit A.

12. For the reasons set forth below, Ferro's receipt and reading of Exhibit A deprived Ferro of his rights to not be subject to abusive, deceptive, or misleading debt collection practices.

13. Per statements and references in Exhibit A, Exhibit A was sent to Ferro in an attempt to collect a past due debt.

14. The past due debt set forth in Exhibit A was based on Plaintiff, as an individual, being issued a CareCredit brand credit card account by Synchrony Bank for his individual use, individually incurring charges by using the credit card account, and then, as an individual, failing to pay for these charges. A CareCredit brand credit card account issued by Synchrony Bank is a credit card account issued to consumers for them to use for personal, family or household purposes. Exhibit A was an attempt to collect this past due debt from Ferro in his individual capacity; and Exhibit A did not refer to any kind of business associated with the account. Based on the above, the past due debt at issue arose out of a

transaction used primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

15. AI is a Minnesota Domestic Limited Liability Company and a New York Foreign Limited Liability Company.

16. Per § 20-490 of the New York City Administrative Code, any business that seeks to collect personal or household debts from New York City residents must have a Debt Collection Agency License from the New York City Department of Consumer Affairs.

17. AI possesses a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency".

18. Based upon Exhibit A, including but not limited to Exhibit A referring to AI as a collection agency, and upon AI possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency", the principal purpose of AI is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

19. Based upon the allegations in the above three paragraphs, AI is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

20. IU is a Delaware Business Corporation and a New York Foreign Business Corporation.

21. A debt collector as defined by the FDCPA, 15 U.S.C. § 1692b(6), is a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

The FDCPA itself does not define the word "person"; but the Dictionary Act's definition of a person expressly includes "corporations" and "companies".  See 1 USC 1.

22. Upon information and belief based upon the above allegations, IU directs and/or requires and/or allows IU's wholly owned "debt collectors" subsidiaries such as AI to carry out collection efforts on IU's behalf and for the sole benefit of IU; IU always possesses the beneficial interests in the collection accounts which IU's wholly owned "debt collectors" such as AI attempt to collect.

23. Based on the above, the principal purpose of IU is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

24. Based on the above, IU is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

### FIRST CAUSE OF ACTION-CLASS CLAIM

25. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-24 of this Complaint.

26. Prior to the date of Exhibit A, AI sent a 15 USC 1692g letter to Ferro to attempt to collect the debt identified in Exhibit A.

27. On the date of Exhibit A and thereafter, AI continued to be the "debt collector" for Synchrony Bank for the debt identified in Exhibit A.

28. As a result of AI on the date of Exhibit A and thereafter being the "debt collector" for Synchrony Bank for the debt identified in Exhibit A, AI knew Synchrony Bank was sending letters such as Exhibit A to consumers

29. As a result of AI on the date of Exhibit A and thereafter being the "debt collector" for Synchrony Bank for the debt identified in Exhibit A, AI allowed or did not object to Synchrony Bank sending letters such as Exhibit A to consumers.

30. Exhibit A was not the first letter sent by Synchrony Bank to a consumer to attempt to collect a debt where AI continued to be the "debt collector" for Synchrony Bank for the debt identified in the letter.

31. As a result of consumers contacting AI and informing AI they had received a letter from Synchrony Bank, AI knew Synchrony Bank was sending letters such as Exhibit A to consumers and thereafter allowed or did not object to Synchrony Bank sending letters such as Exhibit A to consumers.

32. Even if AI did not know Synchrony Bank was sending letters such as Exhibit A to consumers and thereafter did not allow or did not object to Synchrony Bank sending letters such as Exhibit A to consumers, Synchrony Bank was sending letters such as Exhibit A to consumers on behalf of AI, for the benefit of AI, or to assist AI in its attempts to collect debts.

33. Synchrony Bank sending letters such as Exhibit A to consumers resulted in AI collecting debts owed to Synchrony Bank.

34. Based on one or more of the allegations in paragraphs 26-32 of this Complaint, Exhibit A allowed, assisted and/or resulted in AI collecting a debt or attempting to collect a debt or was an action intended to allow, assist and/or result in AI collecting a debt or attempting to collect a debt and therefore Exhibit A was a representation by AI in connection with the collection of any debt.

35. Based on one or more of the allegations in paragraphs 26-32 of this Complaint, Exhibit A allowed, assisted and/or resulted in AI collecting a debt or attempting to collect a debt or was an action intended to allow, assist and/or result in AI collecting a debt or attempting to collect a debt and therefore Exhibit A was a means used by AI in connection with the collection of any debt.

36. All the actions alleged in this Complaint taken by AI or attributable to AI were taken by AI as the "debt collector" and/or agent for the "debt collector" IU and/or for the benefit of the "debt collector" IU.

37. Upon information and belief, IU created, substantially participated in the creation of, or approved the work standards, directives, and/or guidelines which contained instructions, controls, and rules governing the steps AI could and could not take to attempt to collect debts including the contents of collection letters such as Exhibit A and allowing or acquiescing in letters such as Exhibit A being sent to consumers.

38. Based on one or more of the above allegations in this Complaint, IU is vicariously liable for the actions taken by AI or attributable to AI.

39. Synchrony Bank is a creditor; and as a creditor, as long as Synchrony Bank does not use a false name, Synchrony Bank has no obligation to have its letters to consumers comply with the FDCPA.

40. By knowing, allowing, or not objecting to Synchrony Bank sending letters such as Exhibit A which did not have to comply with the FDCPA where such letters allowed, assisted and/or resulted in AI collecting a debt or attempting to collect a debt or such letters were an action intended to allow, assist and/or result in AI collecting a debt or attempting to collect a debt, AI, as a "debt collector" subject to the FDCPA, via letters

such as Exhibit A, attempted to or collected debts without complying with the requirements of the FDCPA such as those contained in 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692g(b), and 15 U.S.C. § 1692e(11).

41. As regards 15 U.S.C. § 1692c(c) and 15 U.S.C. § 1692g(b), if a consumer called AI as a result of a letter such as Exhibit A, AI's conversation with the consumer could include an attempt to collect the debt.  This is in contrast with AI being restricted in the communications it could initiate with the consumer as a result of the consumer having exercised their rights under 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692g(b).

42. For the above reasons, as a result of Exhibit A being sent to Ferro, Defendants violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), and/or 15 U.S.C. § 1692f.

## SECOND CAUSE OF ACTION-CLASS CLAIM

43. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-24 of this Complaint.

44. Exhibit A appears to have been sent by Synchrony Bank.

45. Upon information and belief, AI rather than Synchrony Bank sent Exhibit A to Ferro.

46. The allegation in paragraph 44 is based on Exhibit A not containing the Synchrony Bank logo, prior to the date of Exhibit A AI having sent a 15 USC 1692g letter to Ferro to attempt to collect the debt identified in Exhibit A, and on the date of Exhibit A and thereafter, AI continued to be the "debt collector" for Synchrony Bank for the debt identified in Exhibit A and creditors hire debt collectors when they do not want to take efforts on their own to collect debts and do not take efforts on their own to collect debts while an account remains with a debt collector.

47. All the actions alleged in this Complaint taken by AI or attributable to AI were taken by AI

as the "debt collector" and/or agent for the "debt collector" IU and/or for the benefit of the "debt collector" IU.

48. Upon information and belief, IU created, substantially participated in the creation of, or approved the work standards, directives, and/or guidelines which contained instructions, controls, and rules governing the steps AI could and could not take to attempt to collect debts including the contents of collection letters such as Exhibit A and allowing or acquiescing in letters such as Exhibit A being sent to consumers.

49. Based on one or more of the above allegations in this Complaint, IU is vicariously liable for the actions taken by AI or attributable to AI.

50. As a result of AI sending Exhibit A to Ferro, Defendants violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), and 15 U.S.C. § 1692e(9) by deceiving Ferro into believing that the letter came from Synchrony Bank and for example leading Ferro to believe that there could be more severe consequences in not responding to this letter, allegedly from Synchrony Bank, as opposed to a letter from AI, violated 15 U.S.C. § 1692e(11) since Exhibit A failed to disclose that it was from a "debt collector", 15 U.S.C. § 1692e(14) since AI did not use its true name in sending Exhibit A, and/or 15 U.S.C. § 1692f by deceiving Ferro into believing that the letter came from Synchrony Bank and for example leading Ferro to believe that there could be more severe consequences in not responding to this letter, allegedly from Synchrony Bank, as opposed to a letter from AI.

### THIRD CAUSE OF ACTION-CLASS CLAIM

51. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 of this Complaint.

52. For the reasons set forth in the allegations set forth in the First and Second Cause of Action

in this Complaint, sending Exhibit A to Ferro was deceptive or misleading.

53. Sending Exhibit A to Ferro was consumer oriented for the following reasons:

    a. It was directed at Ferro;

    b. Ferro is a consumer; and

    c. Letters such as Exhibit A where AI is the "debt collector" for Synchrony Bank are sent to dozens, hundreds, or thousands of consumers; and therefore, the conduct at issue against Ferro affected or had the potential to affect similarly situated consumers.

54. Ferro suffered injuries as a result of the deceptive or misleading actions including but not limited to the aforementioned violations of his rights under the FDCPA and the emotional distress resulting from being confused as to whether to interact directly with Synchrony Bank as directed in the letter or to communicate with AI.

55. All the actions alleged in this Complaint taken by AI or attributable to AI were taken by AI as the "debt collector" and/or agent for the "debt collector" IU and/or for the benefit of the "debt collector" IU.

56. Upon information and belief, IU created, substantially participated in the creation of, or approved the work standards, directives, and/or guidelines which contained instructions, controls, and rules governing the steps AI could and could not take to attempt to collect debts including the contents of collection letters such as Exhibit A and allowing or acquiescing in letters such as Exhibit A being sent to consumers.

57. Based on one or more of the above allegations in this Complaint, IU is vicariously liable for the actions taken by AI or attributable to AI.

58. In light of the allegations in this cause of action, if Synchrony Bank sent Exhibit A, each of

the aforementioned misrepresentations and deceptions set forth above constitute a violation of General Business Law 349 by all Defendants.

59. In light of the allegations in this cause of action, if AI sent Exhibit A, each of the aforementioned misrepresentations and deceptions set forth above constitute a violation of General Business Law 349 by AI and IU.

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

61. The classes consist of (a) all natural persons (b) who received a letter dated between January 2, 2018 and January 2, 2019 to collect a past due consumer debt, (c) in a form materially identical or substantially similar to Exhibit A.

62. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members.

63. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

64. The predominant common question is whether Defendant's letters violate the FDCPA.

65. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases and class actions.

66. A class action is the superior means of adjudicating this dispute.

67. Individual cases are not economically feasible.

**WHEREFORE**, Plaintiff requests the following relief:

1. A Judgment against Defendants in favor of Plaintiff for statutory and actual damages, the

       class members for statutory damages, and costs and attorney's fees; and

2. Any and all other relief deemed just and warranted by this court.

Dated:      May 31, 2019

/s/_____
Mitchell L. Pashkin, Esq. (MLP-9016)
Attorney For Plaintiff
775 Park Avenue, Suite 255
Huntington, NY 11743
(631) 335-1107