UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY FERRO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED INTERSTATE, LLC, IQOR US, INC., and SYNCHRONY BANK,<br><br>Defendants. | 19-cv-49 (ARR) (ST)<br><br><br><br><br><br><br><br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

Plaintiff, Anthony Ferro, commenced this putative class action in January 2019. He seeks relief for violations of the Fair Debt Collection Practices Act ("FDCPA") and section 349 of New York's General Business Law. Currently pending before the court are two motions to compel arbitration. The first, filed by Synchrony Bank ("Synchrony" or "the Bank"), seeks to compel arbitration of plaintiff's claims against the Bank pursuant to a 2016 credit card agreement ("the agreement") between plaintiff and Synchrony. The second, filed by Allied Interstate, LLC, and iQor US, Inc. (collectively, "the Allied defendants"), seeks to compel arbitration of plaintiff's claims against the Allied defendants pursuant to two theories of contract law: agency and equitable estoppel. For the reasons explained in this opinion, Synchrony's motion is granted and the Allied defendants' motion is denied. However, the court grants the Allied defendants' request to stay the non-arbitrable claims pending the outcome of the arbitration.

## BACKGROUND

On or about August 7, 2016, Synchrony received an online application in plaintiff's name for a CareCredit-branded credit card. *See* Koehler Decl. ¶ 6, ECF No. 18; *see also* Koehler Decl.

Ex. 1, ECF No. 18-1. Thereafter, Synchrony mailed plaintiff a credit card and a copy of the credit card agreement governing the account. *See* Koehler Decl. ¶ 8; *see also* Account Agreement, 2, ECF No. 18-2 ("Account Agreement"). Synchrony has no record of either of these items being returned by the post office as undeliverable. *See* Koehler Decl. ¶ 8.

The agreement contains an arbitration provision, entitled "Resolving a Dispute with Arbitration," which provides, in relevant part:

> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**
>
> **What claims are subject to arbitration**
> 1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or providers that accept the card or program sponsors if it relates to your account, except as noted below.
>
> . . . .
>
> **No Class Actions**
> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT A ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

Account Agreement 2. Separately, in a provision entitled "Governing Law," the agreement states, "[e]xcept as provided in the Resolving a Dispute with Arbitration section, this Agreement and your account are governed by federal law and, to the extent state law applies, the laws of Utah without regard to its conflicts of law principles." *Id.*

On October 31, 2016, plaintiff incurred a $5,000.00 charge on the credit card issued by Synchrony. *See* Koehler Decl. ¶ 10. Plaintiff made some payments on the account, but he subsequently "defaulted on his repayment obligations." *Id.* On October 25, 2017, Synchrony placed plaintiff's account with Allied Interstate ("Allied") for collection.[1] *See* Lee Decl. ¶ 4, ECF No. 27. A few months later, plaintiff received a letter in the mail about his outstanding debt. *See* Am. Compl. ¶¶ 7–11, ECF No. 23; *see also* Debt Collection Letter, ECF No. 23-1. The letter informed him that his account was "severely past due," and directed him to contact Allied to "resolve this issue." Debt Collection Letter 1. Though the letter was signed by Synchrony and included Synchrony's address in the top left-hand corner, plaintiff believes that the letter was in fact sent by Allied. *See* Am. Compl. ¶¶ 44–45; Debt Collection Letter 1–2. In the alternative, he alleges that Synchrony sent the letter on behalf of Allied or to assist Allied "in its attempts to collect debts." Am. Compl. ¶¶ 31–32. His complaint argues that the coordinated efforts between Allied and Synchrony violated the FDCPA and New York's General Business Law by "deceiving Ferro into believing that the letter came from Synchrony Bank and . . . leading Ferro to believe that there could be more severe consequences in not responding to th[e] letter" because it came from a creditor instead of a debt collector. *Id.* ¶ 50; *see also id.* ¶¶ 40–42, 58–59.

## STANDARD OF REVIEW

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, 201–08, 301–07, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. When evaluating a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion

---

[1] "Allied is a wholly-owned subsidiary of iQor." Allied Defs.' Mot. 1 n.1, ECF No. 26; *see also* Am. Compl. ¶¶ 22–24, ECF No. 23.

3

for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). Hence, I must "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). However, if "the arbitrability of the dispute can be decided as a matter of law based on the undisputed facts in the record, the court 'may rule on the basis of that legal issue and avoid the need for further court proceedings.'" *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *3 (E.D.N.Y. Mar. 9, 2018) (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted)).

## DISCUSSION

The FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." § 2. The statute "embod[ies] [a] national policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *Brecher v. Midland Credit Mgmt., Inc.*, No. 18-CV-3142 (ERK) (JO), 2019 WL 1171476, at *2 (E.D.N.Y. Mar. 13, 2019) (alterations in original) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC*, 563 U.S. at 339 (citations omitted). When deciding "whether to send a dispute to arbitration . . . , a court must determine '(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" *Nat'l Union*

4

*Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, No. 18-CV-5777 (JPO), 2018 WL 6329401, at *3 (S.D.N.Y. Dec. 3, 2018) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). "[T]he moving party has the initial burden of showing that an agreement to arbitrate exists." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 395 (E.D.N.Y. 2013) (citing *Roller v. Centronics Corp.*, No. 87 CIV. 5715 (JFK), 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989)). Once that showing is made, "[t]he party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013)).

### I. Synchrony Bank's motion to compel arbitration is granted.

Synchrony moves to compel arbitration of plaintiff's claims pursuant to the 2016 agreement, which provides that "any dispute or claim between" the accountholder and the Bank must be submitted to arbitration if either party "make[s] a demand for arbitration." Account Agreement 2. Plaintiff does not oppose Synchrony's motion.[2] Because I find that a valid arbitration agreement exists and plaintiff's claims against Synchrony fall squarely within it, I grant Synchrony's motion.

"Whether the parties agreed to arbitrate . . . is determined by state law." *Biggs*, 2018 WL 1225539, at *5 (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)). Pursuant to the agreement's choice-of-law provision, Utah law governs the agreement and any disputes between the parties. *See also Wojcik v. Midland Funding, LLC*, No. 18 CV 3628 (MKB)(RML), 2019 U.S.

---

[2] Specifically, plaintiff explains that he "cannot ascertain a basis to oppose" Synchrony's motion, though he asks the court to "sever [his] claims against Synchrony Bank" so that his claims against the Allied defendants can proceed in federal court. Pl.'s Synchrony Resp. 1, ECF No. 24. He renews this request in his opposition to the Allied defendants' motion to compel arbitration. *See* Pl.'s Allied Resp. 4, ECF No. 28. I address this request below in evaluating the Allied defendants' motion to compel.

5

Dist. LEXIS 93549, at *6 n.1 (E.D.N.Y. June 3, 2019); *Cf. Biggs*, 2018 WL 1225539, at *6. Under Utah law, the agreement between the parties became binding and enforceable after plaintiff was "provided with a written copy of the terms of the agreement" and "use[d] the credit offered." Utah Code Ann. § 25-5-4(2)(e) (West 2004). Though plaintiff did not sign the agreement, the agreement clearly explained that use of the card by the accountholder would signify agreement to its terms. Account Agreement 2 ("By opening or using your account, you agree to the terms of the entire Agreement."). The Koehler declaration, submitted by Synchrony Bank, "is sufficient to establish that the [agreement] was mailed and [plaintiff] received it." *Brecher*, 2019 WL 1171476, at *5 (citing *Mount Vernon Fire Ins. Co. v. E. Side Renaissance Assocs.*, 893 F. Supp. 242, 245–46 (S.D.N.Y. 1995)); *see also Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) (concluding, under Utah law, that "[t]he combination of [plaintiff's] performance of the contract . . . with a presumption that a properly mailed document is received . . . , leads this Court to find that a valid arbitration agreement did exist" (internal quotation marks and citation omitted)); Koehler Decl. ¶¶ 6–9.

Because the arbitration provision is so broad—covering "any dispute or claim" between plaintiff and Synchrony, Account Agreement 2—plaintiff's claims clearly fit within its scope. *See Brecher*, 2019 WL 1171476, at *7; *see also Biggs*, 2018 WL 1225539, at *5 n.4 (holding that FDCPA claims fall within an identical arbitration provision). As the party "resisting arbitration," plaintiff bears the burden of challenging the arbitrability of his claims against Synchrony. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Here, he presents the court with no reason to believe that the arbitration provision should not cover his claims against Synchrony. *See also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (explaining that a dispute should be arbitrated "unless it may be said with positive assurance that the arbitration

6

clause is not susceptible of an interpretation that covers the asserted dispute" (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Moreover, the agreement contains a valid class action waiver, which forbids the accountholder from participating in a "class, representative, or private attorney general action" in any forum. Account Agreement 2; *see also Brecher*, 2019 WL 1171476, at *7 ("[C]lass action waivers, like the one in the Agreement, are valid and enforceable." (citing *Shetiwy*, 959 F. Supp. 2d at 474–75)). Therefore, I grant Synchrony's motion to compel the arbitration of plaintiff's claims on an individual basis.

**II.     The Allied defendants' motion to compel arbitration is denied.**

The Allied defendants have also moved to compel the arbitration of plaintiff's claims against them. *See* Allied Defs.' Mot., ECF No. 26. All parties acknowledge that there is no arbitration agreement between plaintiff and the Allied defendants; instead, the Allied defendants argue that the arbitration provision contained in the credit card agreement between plaintiff and Synchrony also requires plaintiff to arbitrate his disputes against them. *See id.* at 1; Pl.'s Allied Resp. 1, ECF No. 28. The Supreme Court of Utah has held that, "as a general rule, only parties to [a] contract may enforce the rights and obligations created by the contract." *Fericks v. Lucy Ann Soffe Tr.*, 100 P.3d 1200, 1205–06 (Utah 2004) (quoting *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002)). "However, under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 989 (Utah 2006) (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000). Utah courts recognize five exceptions to the rule announced in *Fericks*: "(1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Id.* at 989 n.11 (citing *Int'l Paper Co*, 206 F.3d at 417). The

Allied defendants suggest that they can compel arbitration of plaintiff's claims under either an agency or an estoppel theory.[3]

### A. Agency Theory

The arbitration agreement between plaintiff and Synchrony provides that all claims or disputes between plaintiff and Synchrony, as well as Synchrony's "affiliates, agents and/or providers," are subject to arbitration. Account Agreement 2. Though this provision would seem to extend the arbitration agreement to agents like the Allied defendants, the Utah Supreme Court has clarified that "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's *own benefit*." *Fericks*, 100 P.3d at 1206 (emphasis added). Recently, the Tenth Circuit affirmed that this provision of Utah law precludes a non-signatory agent from compelling arbitration on its own behalf. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1297 (10th Cir. 2017) (quoting *Fericks*, 100 P.3d at 1206).[4] Courts across the country—including in this district—have thus concluded that Utah law does not permit a debt collector to enforce an arbitration provision in an agreement between an accountholder and a creditor under an agency theory. *See, e.g.*, *Wojcik*, 2019 U.S. Dist. LEXIS 93549, at *7–8; *Untershine v. Advanced Call Ctr. Techs., LLC*, No. 18-CV-77, 2018 WL 3025074, at *5 (E.D.

---

[3] Though the Allied defendants specifically argue that plaintiff must arbitrate his claims "based on the doctrine of equitable estoppel," Allied Defs.' Mot. 11, they also seek to distinguish cases that have held that an agency theory does not provide a basis for arbitration in similar circumstances, *see id.* at 9–10. To ensure a comprehensive assessment of the Allied defendants' argument, I address both theories before concluding that neither provides the Allied defendants with a right to compel arbitration.

[4] As stated above, Utah law applies to the arbitration agreement here because of the choice-of-law provision contained in the credit card agreement between Synchrony and plaintiff. All parties agree that Utah law applies and that the account agreement is valid as applied to plaintiff's claims against Synchrony. *See* Allied Defs.' Mot. 4; Pl.'s Allied Resp. 1. This case is thus unlike *Biggs v. Midland Credit Management*, where the court engaged in a choice-of-law analysis because the plaintiff explicitly "challenge[d] whether a valid agreement to arbitrate exist[ed]." 2018 WL 1225539, at *6; *see Wojcik*, 2019 U.S. Dist. LEXIS 93549, at *6 n.1; *Dipisa v. Advanced Call Ctr. Techs., LLC*, No. 17-CV-3029 (JS)(ARL), 2018 U.S. Dist. LEXIS 226065, at *10 n.4 (E.D.N.Y. May 7, 2018). This case is further distinguishable from *Biggs* because the debt collector in that case had purchased the debt from the creditor, and therefore the debt collector was an assignee as opposed to merely an agent for collection. *See Biggs*, 2018 WL 1225539, at *7.

Wis. June 18, 2018); *Dipisa v. Advanced Call Ctr. Techs., LLC*, No. 17-CV-3029 (JS)(ARL), 2018 U.S. Dist. LEXIS 226065, at *8–10 (E.D.N.Y. May 7, 2018); *Taylor v. Advanced Call Ctr. Techs., LLC*, No. 17 C 1805, 2017 WL 6988652, at *3 (N.D. Ill. Dec. 20, 2017).

I am persuaded by these courts, and I adopt their reasoning and analysis of Utah law. Here, the Allied defendants are "seeking to enforce the arbitration clause in the . . . agreement for [their] own benefit—that is, to compel [plaintiff] to arbitrate." *Taylor*, 2017 WL 6988652, at *3. The Allied defendants argue that they are seeking arbitration for the *court's* benefit, with the goal of "preserv[ing] judicial resources and avoid[ing] contradictory determinations by litigating [plaintiff's claims] in a single forum." Allied Defs.' Reply 3, ECF No. 29. These secondary motivations, however, do not alter the conclusion that the Allied defendants' motion to compel arbitration would require plaintiff to arbitrate for the convenience of the defendants—not because plaintiff prefers arbitration as a forum for the resolution of his claims. *Cf. Dipisa*, 2018 U.S. Dist. LEXIS 226065, at *10 (concluding, in a factually similar case, that the debt collector agent could not compel arbitration because it would be doing so "for its own benefit").

The defendants also attempt to distinguish two recent Eastern District of New York cases, *Dipisa v. Advanced Call Center Technologies, LLC* and *Wojcik v. Midland Funding, LLC*, by observing that the plaintiffs in those cases asserted claims only against the debt collector agent and not against the creditor. *See* Allied Defs.' Mot. 9–10. Unlike in *Dipisa* and *Wojcik*, the plaintiff here "asserted claims against both Synchrony and Allied, [and his claims all] center on a single letter that was sent to Plaintiff and which Plaintiff asserts was sent by essentially all of the defendants." *Id.* at 10. This, too, is a distinction without a difference. The Allied defendants cite no case law to suggest that an agent can compel arbitration for its own benefit if a plaintiff also asserts claims against the principal, and the court is unable to find any in its independent research.

9

*Cf. Dipisa*, 2018 U.S. Dist. LEXIS 226065, at *10 ("While Plaintiff is obligated to arbitrate any claims he may have against Synchrony, the same cannot be said for his claims against [Synchrony's agent].").

Thus, I follow the analysis of *Dipisa* and *Wojcik* and conclude that Utah law precludes the Allied defendants from compelling plaintiff to arbitrate his claims under an agency theory.

### B. Equitable Estoppel

In the alternative, the Allied defendants argue that they can compel plaintiff to arbitrate his claims under the doctrine of equitable estoppel. *See* Allied Defs.' Mot. 11–12. They assert that it would be inequitable for plaintiff to avoid arbitration in this case because "the subject matter of the dispute between Plaintiff and Synchrony is factually intertwined with the dispute between Plaintiff and [the Allied] Defendants." *Id.* at 12. In *Ellsworth*, the Utah Supreme Court recognized that a non-signatory to an arbitration agreement may invoke the doctrine of equitable estoppel to compel arbitration in certain circumstances. *Ellsworth*, 148 P.3d at 989 & nn.11–12. Specifically, Utah law permits a non-signatory to compel arbitration if "the signatory plaintiff sues a nonsignatory defendant *on the contract* but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory." *Id.* at 989 n.12 (emphasis added) (citing *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 360–61 (5th Cir. 2003)).

The Second Circuit has expanded on the principle of equitable estoppel in a number of cases, concluding that a non-signatory may be able to compel arbitration when a "careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship v. Am.*

*Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)).[5] The estoppel inquiry is not easily reduced to "formalistic rules," and is instead highly "'fact-specific.'" *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (quoting *JLM Indus., Inc.*, 387 F.3d at 178). Still, it is "essential . . . that the subject matter of the dispute [be] intertwined with the contract providing for arbitration." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2008) (2d Cir. 2008); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) ("[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [his] claims' against the nonsignatory." (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993))), *abrogated on other grounds*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). The Allied defendants argue that plaintiff must arbitrate his claims against all of the defendants because of the close factual connection between the parties and claims.

Recently, the court in *Wojcik* rejected a nearly identical argument made by a debt collector seeking to enforce an arbitration provision under the doctrine of equitable estoppel. *Wojcik*, 2019 U.S. Dist. LEXIS 93549, at *11–13. The plaintiff in *Wojcik* sued a debt collector for allegedly

---

[5] Whether the Allied defendants can invoke equitable estoppel to compel arbitration "is a question governed by . . . state law." *Winter Investors, LLC v. Panzer*, No. 14 Civ. 6852(KPF), 2015 WL 5052563, at *10 n.7 (S.D.N.Y. Aug. 27, 2015) (quoting *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 339 (S.D.N.Y. 2013)). As stated above, the court must rely on principles of Utah law to determine whether the Allied defendants, as non-signatories to the arbitration agreement, can compel plaintiff to arbitrate based on the arbitration provision contained in plaintiff's agreement with Synchrony. *See, e.g.*, *Belnap*, 844 F.3d at 1293. Both plaintiff and the Allied defendants cites cases from outside of Utah to support their estoppel arguments. The parties do not suggest that Utah's equitable estoppel doctrine differs in a material way from the doctrine in other states. Because there are a limited number of cases that analyze the doctrine of estoppel under Utah law, I also cite to cases in the Second Circuit and beyond to provide a more complete analysis of the doctrine. I remind the parties, however, that the Utah Supreme Court's formulation of equitable estoppel is ultimately binding on the court. *See Ellsworth*, 148 P.3d at 989 n.12 (describing this variety of equitable estoppel as "that enforced by a *nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration . . ."); *see also Belnap*, 844 F.3d at 1295 (quoting *Ellsworth*, 148 P.3d at 989 n.12) (explaining that the *Ellsworth* court's formulation is the one theory of equitable estoppel recognized by the Utah Supreme Court "that is conceivably implicated by these facts").

including misleading language in a debt collection letter. *Id.* at *12. Magistrate Judge Levy concluded that equitable estoppel did not entitle the debt collector defendants to compel arbitration because the plaintiff's claims were based on the FDCPA—not on "the terms of [plaintiff's] cardholder agreement" with the creditor. *Id.*[6] Thus, the court concluded, plaintiff had not sued the debt collector "on the contract," and the non-signatory defendants could not rely on equitable estoppel to compel plaintiff to arbitrate. *Id.* at *13 (citing *Smith v. GC Servs. Limited P'ship*, 289 F. Supp. 3d 935, 939 (S.D. Ind.), *aff'd*, 907 F.3d 495 (7th Cir. 2018)). Similarly, in *Untershine v. Advanced Call Center Technologies, LLC*, the court held that a claim based on deceptive debt collection practices did not fall under the terms of the plaintiff's arbitration agreement with a creditor. 2018 WL 3025074, at *10. Though there was necessarily a factual relationship between the underlying credit card agreement and plaintiff's FDCPA claims, those claims "ar[o]se from [the defendant's] conduct as a non-signatory debt collector—not from the terms of the credit card agreement." *Id.*

Like these courts, I conclude that plaintiff's claims against the Allied defendants are not based "on the contract." *Ellsworth*, 148 P.3d at 989 n. 12. Because this is an essential element of the equitable estoppel doctrine, *see id.*; *see also Sokol Holdings, Inc.*, 542 F.3d at 361, the Allied defendants may not invoke the doctrine of equitable estoppel to compel arbitration of plaintiff's claims against them. The Allied defendants cite a number of cases in which courts have found that "FDCPA claims 'relate' to an agreement that gave rise to the debt." Allied Defs.' Reply 4 (citing cases). None of these cases involved the application of equitable estoppel, however, and none analyzed the relevant standard here: whether plaintiff's claims are based "on the contract," *Ellsworth*, 148 P.3d at 989 n.12; *see also Denney*, 412 F. Supp. 2d at 298 ("The plaintiff's actual

---

[6] The defendants in *Wojcik* have filed objections to Judge Levy's report and recommendation. As of the date of this opinion, Judge Brodie has not yet adopted or modified the report and recommendation.

dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non . . . for applying equitable estoppel." (emphasis omitted) (quoting *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004))). Likewise, I am not persuaded by the Allied defendants' request that the court follow the holding of *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375 (E.D.N.Y. 2016). In that case, the plaintiff's complaint alleged that the non-signatory and signatory defendants "constituted a single employer," rendering all of the claims factually intertwined with the underlying arbitration contract. *Id.* at 382. Though the plaintiff here alleges that Synchrony and the Allied defendants engaged in coordinated action to deceive him, his claims against the Allied defendants do not stem from or rely upon the underlying agreement. *See JLM Industries*, 387 F.3d at 178 n.7 (explaining that it would be wrong "to suggest that a claim against a co-conspirator of a party [to an arbitration agreement] . . . will always be intertwined to a degree sufficient to work an estoppel").

In sum, equitable estoppel applies only where the arbitration agreement "form[s] the legal basis" for plaintiff's claims against the non-signatories; "it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011). Though plaintiff's agreement with Synchrony entitled Synchrony to place plaintiff's debt with the Allied defendants for collection, *see* Account Agreement 2, the agreement does not itself form the basis for plaintiff's claims against the Allied defendants.[7] As a result, the Allied defendants may not use the arbitration agreement between plaintiff and Synchrony to compel arbitration.

---

[7] *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005), is particularly instructive. In that case, the plaintiff alleged that the signatory and non-signatory defendants "acted in concert." *Id.* at 70. The Second Circuit held that these allegations could theoretically support the non-signatory defendants' motion to compel under a theory of equitable estoppel. *Id.* However, the court remanded the case to the district court to determine whether "plaintiffs' claims against the [non-signatory] defendants are so 'intimately founded in' or 'intertwined with' the underlying obligations . . . as to allow the non-signatory . . . defendants to

### III. The non-arbitrable claims against the Allied defendants are stayed pending resolution of plaintiff's claims against Synchrony Bank.

In the event that the court denies their motion to compel, the Allied defendants ask the court to stay the non-arbitrable claims pending the completion of the arbitration against Synchrony Bank. *See* Allied Defs.' Mot. 13–15. Because of the near-complete factual overlap between plaintiff's claims against the Allied defendants and his claims against Synchrony, the request is granted.

If a court finds that only some of the claims in an action are arbitrable, the court may decide to stay the remainder of the claims. "The decision to stay the balance of the proceeding pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987). A stay is particularly appropriate if the arbitrable claims and non-arbitrable claims are factually connected, such that a stay would "promote judicial economy, avoidance of confusion and possible inconsistent results." *Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 355 (E.D.N.Y. 2013) (quoting *Acquaire v. Can. Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995)); *see also Moore v. Interacciones Global, Inc.*, No. 94 Civ. 4789(RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants." (citations omitted)).

---

compel arbitration." *Id.* On remand, the district court concluded that they were not; on the contrary, the agreements that contained the relevant arbitration provisions were "only collaterally related" to the plaintiffs' claims. *Denney*, 412 F. Supp. 2d at 301; *see also Ross v. Am. Express Co.*, 547 F.3d 137, 148 (2d Cir. 2008) (observing that *Denney* emphasizes the need for factual intertwinement between plaintiff's claims and the arbitration agreement). *Denney* is thus an important reminder that allegations of concerted action, on their own, do not support a theory of equitable estoppel if the plaintiff's claims against the non-signatory defendants do not stem from the underlying agreement.

All of plaintiff's claims stem from his receipt of a single letter, which he alleges was sent as the result of a coordinated effort by all of the defendants. The arbitrator evaluating plaintiff's claims against Synchrony will likely resolve important common factual questions, including the identity of the sender of the letter. *See* Allied Defs.' Mot. 13–15. These decisions may "effect collateral estoppel" in the litigation of plaintiff's claims against the Allied defendants, *Bear, Stearns & Co. v. 1109580 Ont., Inc.*, 409 F.3d 87, 91 (2d Cir. 2005), and "the arbitration will provide the court with insight into [common] issues of law and fact," *Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986). Thus, because a stay of the non-arbitrable claims will promote judicial economy by reducing "duplication of discovery or issue resolution" and avoiding "piecemeal litigation," *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10 Civ. 8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted), plaintiff's claims against the Allied defendants are hereby stayed.

## CONCLUSION

For the foregoing reasons, Synchrony's motion to compel is granted, and the Allied defendants' motion to compel is denied. During the pendency of the arbitration against Synchrony, plaintiff's claims against the Allied defendants are stayed. Within 14 days of the resolution of the arbitration against Synchrony, plaintiff shall submit a letter updating the court on the outcome of the arbitration.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: July 10, 2019
Brooklyn, New York